IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LAURA SUBER<br>c/o Gottesman & Associates, LLC<br>404 East 12th Street, First Floor<br>Cincinnati, Ohio 54202 | Case No. |
|     PLAINTIFF | Judge |
| vs. | COMPLAINT FOR DAMAGES WITH<br>JURY DEMAND |
| CITY OF COLUMBUS<br>c/o Zach Klein, Esq.<br>77 North Front Street<br>Columbus, Ohio 43215-0009 | |

and

RICHARD WOZNIAK
Deputy Director of Public Safety
City of Columbus
c/o Zach Klein, Esq.
77 North Front Street
Columbus, Ohio 43215-0009

and

ANDREW GINTHER
Mayor, City of Columbus
c/o Zach Klein, Esq.
77 North Front Street
Columbus, Ohio 43215-0009

and

ROBERT CLARK
Director of Public Safety
City of Columbus
c/o Zach Klein, Esq.
77 North Front Street
Columbus, Ohio 43215-0009

and

NED PETTUS
City of Columbus
c/o Zach Klein, Esq.
77 North Front Street
Columbus, Ohio 43215-0009

and

DOUGLAS SARFF
Human Resources Manager
City of Columbus
c/o Zach Klein, Esq.
77 North Front Street
Columbus, Ohio 43215-0009

and

COURTNEY MCHENRY
City of Columbus
c/o Zach Klein, Esq.
77 North Front Street
Columbus, Ohio 43215-0009

and

ELAINE BRYANT
Chief of Police
City of Columbus
c/o Zach Klein, Esq.
77 North Front Street
Columbus, Ohio 43215-0009

and

LASHANNA POTTS
Assistant Chief of Police
City of Columbus
c/o Zach Klein, Esq.
77 North Front Street
Columbus, Ohio 43215-0009

    DEFENDANTS.

2

Now comes Plaintiff, by and through counsel, and for her Complaint against Defendants, state as follows:

## **PRELIMINARY STATEMENT**

1. This is an action under Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e-2(a)(1), 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986 and Ohio Revised Code Chapter 4112, for Defendants' unlawful discriminatory and retaliatory actions against Plaintiff based on gender. Defendants subjected Plaintiff to unlawful, discriminatory, and corrupt policies and practices including, but not limited to, retaliation against protected activity, intimidation, demeaning and divisive comments, spurious investigations, disparate treatment, and a hostile work environment based on gender. Defendants retaliated, harassed, and targeted for investigation Plaintiff after she came forward and reported misconduct by a public official. Defendants failed to properly investigate complaints of discrimination and illegal activity, harassed Plaintiff with spurious investigations, and subjected Plaintiffs to ongoing retaliation, career disadvantage, and a denial of access to a financial buyout provided to similarly situated male personnel. As a consequence of the foregoing, Plaintiff filed this action seeking compensatory damages, recovery for economic losses, punitive damages, declaratory and injunctive relief, and reasonable attorney fees and costs in this matter.

## **PARTIES**

3

2.      At all relevant times herein, Plaintiff was an employee of the City of Columbus. During all relevant times, Plaintiff was an employee within the meaning of 42 U.S.C. §5000e(f) and O.R.C. 4112.01(A)(3).

3.      Plaintiff is a white female and was a sergeant for the Columbus Division of Police, and at all times relevant, a resident of the State of Ohio.

4.      At all relevant times herein, Defendant City of Columbus ("Columbus") is and/or was the employer of Plaintiff, and a public employer within the meaning of Title VII (42 U.S.C. 2000e(b), and O.R.C. 4112.01(A)(2). Defendant Columbus is a duly chartered municipality and city within the state of Ohio and, in that capacity, maintains the Columbus Division of Police. Columbus employs more than 500 persons.

5.      Defendant, Richard Wozniak, (Defendant Wozniak) was, at all times relevant, the Deputy Director of Public Safety for the City of Columbus responsible for, among other things, executive and administrative functions of the Department of Public Safety. He has held that position at all times relevant to this matter. He is sued in his individual and official capacities.

6.      Defendant, Andrew Ginther (Defendant Ginther) is the Mayor of the City of Columbus, responsible for, among other things, executive and administrative functions of the City. He has held that position at all times relevant to this matter. He is sued in his individual and official capacities.

7.      Defendant, Robert Clark (Defendant Clark) is the Safety Director for the City of Columbus, responsible for, among other things, supervision of the Columbus Division of Police.

4

He has held that position since September 3, 2021. He is sued in his individual and official capacities.

8.     Defendant, Ned Pettus (Defendant Pettus) was the Director of Public Safety for the City of Columbus, and was responsible for, among other things, the supervision of the Police department. For purposes of this complaint, he held that position from 2016 through August 2021, when he retired. He is sued in his individual capacity.

9.     Defendant, Douglas Sarff (Defendant Sarff) is the Director of Human Resources for the City of Columbus and has oversight, control, and supervision over the actions complained of herein. He has held that position at all times relevant. He is sued in his individual and official capacities.

10.     Defendant, Courtney McHenry (Defendant McHenry) was the Deputy Director of Public Safety for the City of Columbus, Division of Police, and was directly responsible for the investigation of complaints, oversight, and administration of EEO policy and compliance. For purposes of this complaint, she held that position from December 2021 through November 2022, when he resigned. He is sued in his individual capacity.

11.     Defendant, Elaine Bryant (Defendant Bryant) is the Chief of Police for the City of Columbus and has oversight, control, and supervision over the actions complained of herein. She has held that position at all times relevant. She is sued in her individual and official capacities.

12.     Defendant, LaShanna Potts (Defendant Potts) is the Assistant Chief of Police for the City of Columbus and has oversight, control, and supervision over the actions complained of

5

herein. She has held that position at all times relevant. She is sued in her individual and official capacities.

## VENUE AND JURISDICTION

13.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because Counts I, II, and III arise under the laws of the United States, Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e *et seq*, and Count IV arises under 42 U.S.C. § 1983.

14.     This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367, because Plaintiff's state law claims are so related to her federal claims over which the Court has jurisdiction that those claims form part of the same case or controversy.

15.     Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because the acts complained of all occurred within this judicial district.

## PROCEDURAL HISTORY AND REQUIREMENTS

16.     On or about March 17, 2023, Plaintiff filed timely charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the Ohio Civil Rights Commission through dual filing and a work share agreement (the EEOC retained jurisdiction over the investigation). *See Exhibit A-1, attached*.

17.     On or about June 21, 2023, the EEOC issued a Notice of Right to Sue as to Plaintiff's EEOC charges. The Plaintiff received the issued Notice of Right to Sue by email shortly after the date of issuance. *See Exhibit A-2, attached*.

18.     The Plaintiff exhausted all required administrative remedies before commencing this action.

19.     The complaint was filed within 90 days of receipt of the Notices of Right to Sue issued by the EEOC.

## STATEMENT OF FACTS

20.     Plaintiff was employed by the Columbus Division of Police for over 29 years. She was a decorated police sergeant and, at all times relevant, was assigned as the Training Sergeant at the James G. Jackson Regional Training Facility.

21.     Plaintiff was responsible for the training of new police recruits throughout Ohio. Plaintiff's job duties included training sworn CPD personnel in the Division's policies, procedures, tactics, and techniques related to the Division's Use-of-Force Continuum. This training involves annual certification and recertification in intermediate weapons, prisoner control tactics and techniques, pain compliance, handcuffing; and a review of policies, procedures, and case law associated with the use of force.

22.     By way of background, between May 28, and July 19, 2020, during civil unrest and riots that plagued the City of Columbus, Plaintiff was assigned to supervise a squad of Columbus police officers tasked with responding to civil unrest, looting, and widespread destruction of property and violence.

23.     By way of background, between May 28, 2020, and July 19, 2020, rioters assaulted police officers with several types of projectiles including, but not limited to, rocks, frozen water

bottles, commercial-grade fireworks, and pieces of concrete. Rioters shattered windows at local businesses, set fires, and burglarized/looted businesses and landmarks, such as the Ohio Theater.

24.     By way of background, on May 30, 2020, Plaintiff and all responding officers were advised by CPD supervisors that the Division would not tolerate crimes of property destruction, violence, and roadways being taken over by violent offenders.

25.     By way of background, rioters used "supply" and/or "agitator" vehicles to facilitate their goal of afflicting harm on police officers and citizens and maximizing destruction within the City of Columbus. These vehicles contained firearms, ammunition, sledgehammers, projectiles, and other dangerous items.

26.     By way of background, on May 30, 2020, Plaintiff was assigned to supervise a "mobile arrest team". The purpose of the "mobile arrest team" was to arrest individuals who were resupplying rioters with dangerous ordinances used to inflict harm on police officers and the general public.

27.     This "mobile arrest team" included Officer Traci Shaw and Plaintiff operated as Officer Shaw's direct supervisor.

28.     During this time frame, rioters were throwing rocks, bottles, and other items at Plaintiff and other police officers, Plaintiff and fellow officers were at the intersection of Hubbard and High Street, at which time Plaintiff instructed all officers to retreat to the area of Goodale and High Street for their safety.

29.     An emergency was declared by public safety officials and all protestors and rioters were ordered to disperse and leave the area or face potential arrest.

30.     Because rioters had taken over the roadway, disregarded verbal warnings to disperse, outnumbered, and overwhelmed the officers, an "officer in trouble call" was aired. Plaintiff ordered officers to return to their cruisers and use the public announcement (PA) system to order rioters to "Clear the Area or You will be Maced."

31.     At all relevant times hereto, Plaintiff ordered officers, if presented with the opportunity, to initiate arrests for any offenses for failure to disperse, riot, or misconduct due to the emergency declared by the City.

32.     Officer Traci Shaw yelled from inside her cruiser to several individuals, "You can't come this way". The individuals failed to obey Officer Shaw's lawful command and continued to approach the intersection of Goodale and High. Based upon the individuals' failure to comply with Plaintiff's lawful command, as well as the orders previously provided by law enforcement to "clear the area", Officer Shaw lawfully deployed a one to two-second burst of Division-issued chemical spray.

33.     None of the individuals who encountered the chemical agent required any medical attention nor suffered any injuries.

34.     In June 2020 and continuing through 2021, Defendant Ginther publicly solicited complaints from the public of alleged misconduct committed by police officers during the civil unrest and riots of 2020.

35.     On or about June 24, 2020, Defendant Ginther announced that an independent investigator would be hired to investigate alleged police misconduct occurring during the period

of civil unrest and rioting.  It was disclosed the law firm of Baker Hostetler would be investigating administrative violations by Columbus Police Officers.

36.     At or around July 1, 2020, the City of Columbus by and through Mayor Ginther and/or Columbus City Council hired and/or appointed Defendant Richard Wozniak to investigate alleged criminal conduct by Columbus Police officers during the riots. Defendant Wozniak was appointed as a Deputy Director with the Columbus Department of Public Safety.

37.     At the time of his hiring and/or appointment to act as a special investigator and in his employment with the City of Columbus, Department of Public Safety, Defendant Wozniak was required to uphold the United States Constitution, as well as the constitution and laws of the State of Ohio. At all relevant times hereto, Defendant Wozniak acted in his official capacity and under the color of law as a special investigator and/or Deputy Director for the City of Columbus Department of Public Safety.

38.     By way of background, starting in July 2020 and continuing through 2021, Defendant Wozniak conducted criminal investigations into allegations of misconduct stemming from complaints solicited from the public. Defendant Wozniak interviewed numerous complainants, witnesses, and officers.

39.     By way of background, on February 8, 2021, Defendant Wozniak interviewed Traci Shaw regarding the incident that occurred on May 30, 2020, an incident to which Plaintiff was a witness.

40.     By way of background, on or about March 8, 2021, Traci Shaw reported to Human Resources Manager Amy Van Pelt she was treated in a disrespectful and discriminatory manner by Defendant Wozniak during the interview.

41.     By way of background, on or about February 2021, Plaintiff became aware other supervisors of "focus" personnel were being interviewed as part of the investigations being conducted by Defendant Wozniak.

42.     By way of background, Officer Traci Shaw specifically identified, in her interview with Defendant Wozniak, that Plaintiff was a necessary witness to the incident, Shaw's immediate supervisor, and Plaintiff had given orders to use force and initiate arrests to repel threats from the area.

43.     Defendant Wozniak failed and/or refused to interview Plaintiff and to conduct a reasonably thorough investigation that would corroborate statements made by Officer Shaw and other witnesses.

44.     On June 9, 2021, without probable cause, legal right, or justification and/or failure to conduct a reasonable investigation, motivated by politics and/or ill will, Defendant Wozniak filed in Franklin County Municipal Court the following criminal complaints against Officer Traci Shaw as a result of her conduct as a Columbus Police Officer in her official capacity on May 30, 2020, during the riots: (1) Three Counts of Assault in violation of R.C.2903.13(A) for purported use of one burst of mace; (2) Three Counts of Dereliction of Duty in violation of R.C. 2921.44(E) as a result of the assault set forth above; (3) Three Counts of Interfering with civil rights in violation of R.C. 2921.45 by violating fourth amendment rights.

11

45.     On or about June 9, 2021, Plaintiff became aware that before filing criminal charges against Traci Shaw, Defendant Wozniak failed to properly investigate the matter, including but not limited to (1) interview Columbus Police officers or any peace officer, including Plaintiff: (2) interview two of the alleged victims outlined in the criminal complaint, and (3) retain and/or consult with a "use of force" expert.

46.     On or about June 9, 2021, Plaintiff had substantial evidence and knowledge Defendant Wozniak conducted an improper criminal investigation which resulted in criminal charges against Traci Shaw. The evidence was as follows:

    a.  Defendant Wozniak failed or refused to interview necessary police witnesses who could exonerate the actions of Officer Shaw.

    b.  Defendant Wozniak failed or refused to interview necessary civilian witnesses to the actions of Officer Shaw.

    c.  Defendant Wozniak failed or refused to interview Haley Hensel, an alleged "victim" of the actions by Officer Shaw, before filing charges against Officer Shaw.

    d.  Defendant Wozniak filed criminal charges, and signed an Affidavit, without probable cause to support the criminal charges.

    e.  Defendants unfairly targeted female law enforcement officers, while ignoring the actions of similarly situated male officers.

47.     On July 23, 2021, Plaintiff contacted Channel 6 investigative reporter Tara Morgan and completed an on-camera interview exposing the improper investigation and the malicious criminal charges that had been filed against Traci Shaw. This news segment aired on July 26, 2021.

48.     On July 26, 2021, a corresponding news article was published on the Channel 6 website.

49.     In response to Plaintiff's media interview, on July 28, 2021, Defendant Wozniak met with Defendants Bryant and Potts to protest Plaintiff's interview with the media.

50.     On August 10, 2021, Defendant Wozniak forwarded a criminal subpoena to Plaintiff requiring her to appear in Franklin County Municipal Court Case #2021CRB007958 on September 15, 2021, at 9:00 a.m., and to bring any photographs or videos taken on May 30, 2020.

51.     As a result of Plaintiff's interview with the media, on August 11, 2021, Defendant Wozniak was forced to interview Haley Hensel, an alleged "victim" of the actions by Officer Shaw, whom Defendant Wozniak had failed to interview before filing criminal charges against Officer Shaw.

52.     On August 30, 2021, Plaintiff was advised by Commander Mark Lang that Defendant Wozniak had met With Defendants Bryant and Potts and Plaintiff was being ordered to immediately submit a "voluntary statement" regarding the events involving Officer Shaw.

53.     Plaintiff responded via email expressing she felt harassed and pressured to complete a statement that was not voluntary and one that similarly situated males were not required to complete.

54.     On September 3, 2021, Plaintiff submitted the ordered statement to Defendant Wozniak. The statement was detailed and approximately 16  pages in length.

55.     On September 7, 2021, Defendant Wozniak forwarded an email to Plaintiff. requesting availability for a "voluntary interview."

13

56.    On September 9, 2021, Plaintiff declined a voluntary interview because she had submitted the detailed statement, and because she had been subpoenaed to testify in court on September 15, 2021.

57.    In September 2021, Prosecutor Kathleen Garber harassed Plaintiff and attempted to force her to submit to a voluntary interview when she reported Plaintiff as uncooperative to Defendant Potts.

58.    On September 16, 2021, Plaintiff again reported to Defendant Potts she was being harassed, pressured to provide a "voluntary" interview, and treated differently than similarly situated male counterparts.

59.    On October 12, 2021, Prosecutor Garber, with the knowledge and support of Defendants, continued to pressure and harass Plaintiff by appearing on a local news channel and accusing Plaintiff of failing to cooperate and hindering the prosecution in a criminal investigation.

60.    On October 21, 2021, Plaintiff again reported to Defendants she was being harassed and treated differently than similarly situated males, when Plaintiff sent the Division's Legal Advisor, Jeff Furbee, an email advising him of the harassment and publicly disparaging remarks made by Prosecutor Garber.

61.    On January 31, 2022, Plaintiff opted into the Retirement Incentive Program (herein RIP), Memorandum of Understanding #2021-02.  The RIP permitted 100 sworn participants with at least 25 years of continuous service, and who were not under any pending criminal or administrative investigation the opportunity to retire and receive a financial benefit of $200,000.

14

62.     On January 7, 2022, Arbitrator Margaret Nancy Johnson ruled that the City could compel a witness member to testify in criminal investigations conducted by the Office of Public Safety. On February 1, 2022, Plaintiff was advised she would be compelled as a witness to submit to an interview by Defendants, to be conducted by Defendant Wozniak.

63.     On February 1, 2022, Plaintiff became aware that no other male supervisors were to be compelled to an interview. Plaintiff confirmed on this date that Defendant Wozniak had not requested or scheduled interviews with similarly situated male supervisors and Plaintiff was the only supervisor that had been required to submit a detailed written statement. These male supervisors included Sergeant Chris Cheatham, Sergeant Keith Barker, Lieutenant Tim Sansbury, Lieutenant Larry Yates, and Lieutenant Jimmie Barnes.

64.     On February 7, 2022, Plaintiff received an email with a Garrity Notification on behalf of Defendants advising her of a scheduled interview for Monday, February 14, 2022.  The Garrity Notification listed a specific scope for the interview as On May 30, 2020, at approximately 7:52 pm, at the intersection of High Street and Goodale Street, the incident involving Officer Traci Shaw and the one which Plaintiff had brought forth in the media allegations of misconduct on the part of the City of Columbus and Defendants.

65.     On February 14, 2022, Defendant Wozniak conducted what was identified as a "witness interview" on the Plaintiff. The interview was hostile, intimidating, intentionally disrespectful, and threatening. The following are some of the details of Defendant Wozniak's conduct:

15

a. Defendant Wozniak purposefully faced away from Plaintiff for the majority of the interview, inconsistent with interview best practices.

b. Defendant Wozniak utilized his position of authority to harass and intimidate Plaintiff by conducting an interview that lasted for 2.5 hours.

c. Plaintiff was subjected to disrespect, hostility during questioning, and intimidation unlike any other interview conducted by Defendant Wozniak, and inconsistent with other male interviewees.

d. The line of questioning far exceeded the scope of the interview and Defendant Wozniak utilized the process as a fishing expedition in retaliation for Plaintiff's actions as a whistleblower.

e. Defendant Wozniak threatened Plaintiff with job repercussions, up to and including termination for the refusal, or perceived reluctance to answer questions to his satisfaction.

f. Defendant Wozniak refused to clarify when asked after the interview and became increasingly hostile towards Plaintiff if Plaintiff had become a focus of the investigation.

g. Following the interview, FOP representative Nathan Lipperman stated to Plaintiff in a text message "I can tell you from first-hand experience being in most of them (interviews) that yours was easily one of the most contentious. And yours was def. the only one where Wozniak faced away basically the entire time."

16

h.   Defendants used the interview process to harass, intimidate, and retaliate against Plaintiff based on her gender and in response to protected activity.

66.   On February 14, 2022, in response to continued harassment, threats, and retaliation, Plaintiff filed an internal E.E.O. complaint with Assistant Director Courtney McHenry.

67.   On February 14, 2022, Internal Affairs Sergeant Josh VanDop forwarded an email notifying Defendants that Defendant Wozniak went beyond the scope of the investigation, the interviews were hostile, threatened discipline or termination, and he was concerned about the liability placed upon the Division.

68.   On February 16, 2022, City Attorney Zac Klein responded to this email exchange and reiterated to Defendant Wozniak the specific limitations and parameters related to the questioning of witness officers.

69.   On February 18, 2022, Plaintiff met with Defendant Potts who indicated she had listened to the interview and found it to be extremely hostile and contentious.  Defendant Potts was aware the internal E.E.O. complaint had been filed by Plaintiff and she stated that measures had already been taken to address Defendant Wozniak's conduct.

70.   On February 28, 2022, Plaintiff submitted a letter titled "EEO Statement" to Defendant Courtney McHenry, EEO Compliance Officer, detailing and advising the City and named Defendants of the continuing harassment and retaliation.

71.   On March 11, 2022, City of Columbus Public Safety official, Defendant Doug Sarff, sent Defendant Wozniak an email requesting he review the list of persons applying for the RIP and

17

report if any participants were under pending criminal or EEO investigations. Defendant Sarff explained this request was to comply with the contractual obligations under the FOP Contract.

72.     Defendant Wozniak failed or refused to respond with information.

73.     On March 21, 2022, Brooke Carnevale (Department of Human Resources) informed Defendants Sarff and Wozniak the RIP terms require notification and removal from RIP eligibility for anyone under a pending criminal and/or administrative investigation.

74.     On March 23, 2022, ABC Channel 6 reporter Tara Morgan aired a segment titled, "Retaliation accusation in EEO Complaint filed by Columbus Police Sergeant," also publishing Plaintiff's recent EEO statement alleging retaliation and harassment.

75.     In response to the media attention, on March 24, 2022, Commander Lang received a phone call from a representative of the Mayor's Office inquiring about the concerning conduct of Defendant Wozniak.

76.     On March 28, Director Richard Wozniak responded by email to the request for information related to the RIP list stating, "None are under current criminal investigation that I am aware of as of today."

77.     On April 1, 2022, Plaintiff was notified of her acceptance as a participant in the RIP (Retirement Incentive Program). Plaintiff makes plans to retire under the Retirement Incentive Program (RIP).

78.     On April 5, 2022, Defendant Sarff forwarded an email to Defendant Wozniak with the RIP Final participant list, which included Plaintiff's name. Defendant Wozniak was asked to

review the list for a final time and advise if any participants had become a focus of an investigation, requiring their removal from RIP eligibility.

79.     On April 5, 2022, Sergeant Suber completed an E.E.O. interview with Defendant McHenry related to her harassment and disparate treatment complaints against Defendant Wozniak.

80.     On April 12, 2022, a CPD Executive Staff meeting occurred. The following is an excerpt taken from attendee Commander Mark Gardner's notes:

   a.  Deputy Chief Ken Kuebler pointed out that many of the interviews seem to target females and those interviews seem to be very contentious.

   b.  Defendant Potts stated that she and Defendant Bryant listened to the interviews and they appeared very hostile specifically toward females.

   c.  Assistant Chief Greg Bodker, stated "several of these interviews have become unprofessional and disrespectful."

81.     On April 15, 2022, Plaintiff was notified by Deputy Chief Kelly Weiner that Defendant Bryant had assigned Plaintiff a RIP separation date of June 15, 2022. Plaintiff formalized all plans to retire on that date.

82.     On April 26, 2022, Defendant Wozniak interfered in Plaintiff's pending EEO complaint when he requested Defendant McHenry provide any and all reports and recordings related to Plaintiff's EEO interview.

83.     On May 5, 2022, Defendant McHenry sent Plaintiff an official email notification the EEO investigation based on Plaintiff's complaint against Defendant Wozniak, had been stayed

19

pending the conclusion of Defendant Wozniak's continuing criminal investigations, and the investigation into the discriminatory and retaliatory actions would not be progressed at that point.

84.    On May 17, 2022, Defendant Sarff sent Defendant Wozniak a third email requesting confirmation that individuals on the RIP list did not have any pending administrative and/or criminal investigations, as the first group of Division personnel were prepared to retire on May 18, 2022, as part of the RIP.

85.    Defendant Wozniak refused stating he would not comment on pending criminal investigations. Defendant Sarff indicated his only goal was to confirm no individual on the list was under a pending investigation.  Defendant Wozniak responded, "I have stated my opinion."

86.    Defendant Wozniak repeatedly refused to confirm or deny that Lieutenant Larry Yates, a similarly situated male also on the RIP list, was under administrative or criminal investigation. Lt. Larry Yates was scheduled to retire on May 18, 2022.

87.    Lt. Larry Yates was being criminally investigated by Defendant Wozniak for potential criminal violations for Assault and Interference with Civil Rights -1st Amendment, for his actions on June 1, 2020, and would not have been eligible for the RIP.

88.    On May 18, 2022, Lt. Larry Yates was permitted to retire as a participant in the RIP and received a $200,000  retirement bonus.

89.    Defendants permitted Lt. Yates, a similarly situated male under criminal investigation, to avoid interviews related to his conduct, and he was permitted to retire without interference, receiving a substantial monetary benefit.

90.     On May 25, 2022, HR Manager Jennifer Dieringer forwarded Sergeant Suber a congratulatory email and assigned her a RIP retirement date of June 15, 2022, at 9:45 a.m.

91.     On May 27, 2022, Brooke Carnavale sends text messages indicating Lt. Larry Yates appeared to be ineligible for the RIP. Ms. Carnavale stated Defendant Wozniak withheld information regarding investigations concerning Lt. Yates.

92.     On June 3, 2022, in an email from HR Manager Jennifer Dieringer before the official payout to RIP retirees, Deputy Chief Kelly Weiner stated the Division had never been provided the names of the CPD personnel under criminal investigation by Defendant Wozniak. The program terms stated anyone being investigated by Defendant Wozniak would not be eligible for the payment.

93.     Lt. Larry Yates received the $200,000 retirement incentive payout.

94.     On June 10, 2022, a notice of Plantiff's June 15 retirement date was posted in the CPD Division Wide Announcement.

95.     On June 10, 2022, at 5:05 pm, Prosecutor Garber (the special prosecutor working directly with Defendant Wozniak on behalf of Defendants) forwarded an email and a letter titled "Referral for Administrative Discipline" to Defendants Bryant, Clark, Wozniak, and others. This document confirmed Defendants knew Lieutenant Larry Yates was under pending administrative and criminal investigation and ineligible for the RIP payout at the time he retired.

96.     Plaintiff was listed under Event #13 and it appeared that she was under pending administrative investigation. Plaintiff was NOT under any pending criminal investigation.

97.     On June 13, 2022, Holley Fannin sent Defendants Wozniak and McHenry an email to review the RIP participant list of employees scheduled to retire on June 15.

98.     On June 14, 2022, Wozniak responded and copied several individuals on his response, including Director Clark, Chief Bryant, Doug Sarff, George Speaks, City Attorney Klein, Legal Advisor Furbee, etc. Director Wozniak referred persons identified in the "Referral for Administrative Discipline" summary (which included Plaintiff) to be administratively investigated. The referral on Plaintiff was related, not to her actions during the civil unrest, but her actions of exposing misconduct by Defendant Wozniak and reporting harassment through the EEO process.

99.     Plaintiff was never notified of this referral, was scheduled to retire under the RIP on June 15, 2022, had already completed almost all out-processing, and was prepared to celebrate her retirement with family and friends.

100.     On June 15, 2022, at 9:40 am, Plaintiff reported to CPD Police Headquarters and was advised by HR Manager Jennifer Dieringer that her retirement could not be processed and she was being denied the $200,000 retirement incentive.  Dieringer could not provide a reason for this decision.

101.     On June 15, 2022, Plaintiff met with Deputy Chief Weiner, who was extremely upset by this decision, describing the Director's Office actions as retaliatory.  On June 15, 2022, Legal Advisor Jeff Furbee sent Jennifer Dieringer an email inquiring about the status of Plaintiff's EEO complaint against Deputy Director Wozniak.  Furbee also sent members of the City Attorney's Office emails with the "Referral for Administrative Discipline" letter attached and wrote, "We are going to need to talk more about this.."

22

102.     On June 16, 2022, Defendant Potts sent an email to Defendant Wozniak requesting all underlying records regarding Plaintiff's referral for administrative investigation. Defendant Wozniak forwarded the email to Kathleen Garber and she replied that she was hesitant to forward the records because Plaintiff had impeded and obstructed the case of Officer Shaw.

103.     On June 16, 2020, Defendant Bryant sent Defendant Clark an email that stated Plaintiff was not under administrative investigation at the time of retirement, and Plaintiff should have been permitted to resign in good standing with a retirement date of June 15, 2022.

104.     On June 17, 2022, fearing continued retaliation, Plaintiff submitted a new retirement letter, providing a two-week notice and leave time.  Plaintiff also forwarded Defendant McHenry an email alerting him of the retaliation, denial of benefits, and disparate treatment when compared to similarly situated males. Plaintiff wrote, "I wanted to keep you updated on the events that transpired this week.  I find that once again, I have been retaliated against by Director Wozniak and treated differently than male counterparts who were similarly situated… (when) Larry Yates was permitted to retire under the conditions listed in the RIP Program in May 2022…"

105.     On June 17, 2022, Deputy Chief Kelly Weiner sent Plaintiff a text message stating, "I am reaching out to tell you I am absolutely disgusted with the cruel and vindictive actions of the Director's Office personnel..." thereby confirming at the highest levels of the Division the actions by Defendants were retaliatory and without merit.

106.     On June 17, 2022, Plaintiff was informed she would now be permitted to sign the RIProgram waiver release form, making her potentially eligible for the financial benefit.

23

107.    Plaintiff understood that by signing the waiver she would relinquish all rights to pursue a claim against the City of Columbus. Her previous complaints of harassment, disparate treatment, and retaliation for protected activity would not be investigated.  Plaintiff was also aware that the Chief of Police hadn't reviewed the records of Defendant Wozniak's investigation so an official review conclusion had not been reached.  There was still a possibility that Plaintiff would not receive the financial benefit, while her pending EEO claim would be closed.

108.    Plaintiff felt forced into relinquishing her right to pursue the pending retaliation claim and harassed into a position that would require a waiver of her rights.  She believed the retaliation would continue and Plaintiff was not confident Defendants would permit her to receive the RIP benefit.

109.    In July 2022, after an impressive career, Plaintiff unceremoniously retired from the Division after she was harassed, and retaliated against for exercising her First Amendment rights and after reporting disparate treatment based on gender. Plaintiff was denied the same benefit afforded to similarly situated male officers.

110.    On June 23, 2022, Deputy Chief Ken Kuebler forwarded an email to Defendant Potts and Assistant Chief Bodker recommending that representatives of the Department of Public Safety be referred to the Ohio Ethics Commission for their role in denying Plaintiff the benefit afforded a similarly situated male, Lt. Larry Yates.

111.    Plaintiff experienced a pattern of illegal employment discrimination including violations of her 1st Amendment Rights; disparate treatment compared to similarly situated male

employees; and retaliatory practices which led to her June 15 retirement being stopped mere moments before she was to retire.

112.    Sergeant Suber relied upon Defendants' approval permitting her to make a life-altering decision to retire as a member of the Columbus Division of Police on June 15, 2022, and as a participant in the Retirement Incentive Program based upon her years of service and unblemished work history. Instead, she was later approved for the RIP and pressured as a legal maneuver to conceal the ongoing illegal employment practices and actions taken by defendants and other representatives of the Department of Public Safety.

## STATEMENT OF CLAIMS

## COUNT I – HOSTILE WORK ENVIRONMENT (against the City of Columbus)

### Title VII, 42 U.S.C. § 2000e *et seq;* R.C. Chapter 4112, *et seq.*

113.    Plaintiff incorporates the previous paragraphs as if fully rewritten herein and further alleges as follows:

114.    From May 22, 2022, to July 1, 2022, Plaintiff was qualified and held a position as a sworn law enforcement officer for the Columbus Division of Police.

115.    The City of Columbus is and was at all times relevant hereto, an "employer," as that term is defined in 42 U.S.C. § 2000e(b) and has more than 15 employees working more than each working day in each of twenty or more calendar weeks.  The City of Columbus is and was at all times relevant hereto, an "employer," as that term is defined in R.C. 4112.01(A)(2) and employed more than the required number of employees to so qualify.

25

116.    Plaintiff was at all times relevant hereto, an "employee" of the City of Columbus, as that term is defined in 42 U.S.C. § 2000e(f) and R.C. 4112.01(A)(3).

117.    From July 28, 2021, to July 2022, and because of her gender, Plaintiff was subjected to various actions and mistreatment, as outlined in the preceding paragraphs.

118.    From July 28, 2021, to July 2022, the conduct of the Defendants was so severe and/or pervasive that it had the purpose and effect of unreasonably interfering with the Plaintiff's work performance and/or creating an intimidating, hostile, and/or offensive work environment.

119.    From July 28, 2021, to July 2022, the Defendants, which included top-level management and supervision, knew the discriminatory actions and/or supervised Plaintiff.

120.    From July 28, 2021, to July 2022, for the reasons and based on the facts outlined in the preceding paragraphs, and under 42 U.S.C. § 2000e-2(1), the Defendant City of Columbus "otherwise" "discriminated against" Plaintiff "concerning [her] compensation, terms, conditions, or privileges of employment, because of such individual's gender," and in contravention of 42 U.S.C. § 2000e-2(a)(1).  From September 2020 to July 2022, for the reasons and based on the facts outlined in the preceding paragraphs, and under 42 U.S.C. § 2000e-2(a)(2), the Defendant City of Columbus limited, segregated, and/or classified the Plaintiff in a way which would deprive or tend to deprive her of employment opportunities or otherwise adversely affect her status as an employee, because of her gender.  In the alternative, gender-motivated the foregoing actions, in contravention of 42 U.S.C. § 2000e-2(m).

121.    From July 28, 2021, to July 2022, Defendant, City of Columbus, likewise because of the gender of the Plaintiff, "otherwise" discriminated against the Plaintiff "concerning hire,

26

tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," in contravention of 4112.02(A).

122.    Because of the involvement of high-level decision-makers in the foregoing discrimination, the Defendant City of Columbus is liable therefore.  In the alternative, Defendant City of Columbus knew or should have known of the actions herein and failed to take reasonable care to prevent and promptly correct the actions of the individuals and is therefore liable for their actions.

123.    From July 28, 2021, to July 2022, and as a direct and proximate result of the Defendant City of Columbus' acts and omissions set forth above, Plaintiff suffered and continues to suffer damages and losses, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff suffered and continues to suffer from emotional distress for which she should be compensated.

124.    From July 28, 2021, to July 2022, the above actions by the Defendant City of Columbus constitute hostile work environment harassment in violation of 42 U.S.C. §2000e, *et seq.* and R.C. Chapter 4112, *et seq*., rendering Defendant City of Columbus liable for injunctive relief, equitable relief, including back pay, damages, attorneys fees, compensatory damages, including damages for emotional distress, loss of income, benefits, and such other damages as may be proven at trial, under the provisions of 42 U.S.C. §2000e-5 as well as R.C. 4112.052.

125.    From July 28, 2021, to July 2022, the facts as alleged herein demonstrate that Defendant City of Columbus engaged in discriminatory practices, ongoing harassment, and retaliation with malice or with reckless indifference to Plaintiff's federally protected rights.

126. From July 28, 2021, to July 2022, Defendant City of Columbus' actions warrant the imposition of punitive damages under 42 U.S.C. §2000e, 42 U.S.C. §1983, Ohio common law, and other applicable laws.

127. From July 28, 2021, to July 2022, punitive damages are warranted under state law, as Defendants' actions constitute oppression and/or malice., Defendant City of Columbus authorized and ratified such conduct, or should have anticipated such conduct would occur, and taken steps to prevent such conduct, especially after such conduct was reported to Defendant by Plaintiffs, and appropriate remedial action and remedies were not taken.

### COUNT II – GENDER DISCRIMINATION (against the City of Columbus)

#### Title VII, 42 U.S.C. § 2000e *et seq.*; R.C.4112, *et seq.*

128. Plaintiffs incorporate the previous paragraphs as if fully rewritten herein and further allege as follows:

129. The facts as alleged herein, that occurred from September 2020 to July 2022, constitute direct evidence of discrimination in violation of 42 U.S.C. §2000e, *et seq.* and R.C. Chapter 4112, *et seq.*

130. From July 28, 2021, to July 2022, Plaintiff was qualified and held a position as a sworn law enforcement officer for the Columbus Division of Police.

131. From July 28, 2021, to the present, Plaintiff was a white, female and a member of a class of protected individuals under 42 U.S.C. 2000e, *et seq.* and R.C. Chapter 4112, *et seq.*

28

132.    From July 28, 2021, to the present, Plaintiff suffered intentional discrimination and ultimately, had various adverse actions taken against her as the result of her status within the protected class.

133.    From July 28, 2021, to the present, furthermore, other individuals outside of Plaintiff's protected class, and employed by Defendant City of Columbus, were treated more favorably, were not harassed, and did not have material adverse employment actions taken against them.

134.    From July 28, 2021, to the present, Defendants' acts in discriminating against Plaintiff based on her gender include but are not limited to, harassing and intimidating Plaintiff through the investigative process, treating Plaintiff differently than similarly situated male officers and supervisors, threatening Plaintiff with job actions and administrative charges for reporting misconduct by a public official and discriminatory behavior,   denying Plaintiff a substantial monetary benefit afforded to similarly situated males, and retaliating against Plaintiff for protected speech.

135.    From July 28, 2021, to the present, Ginther, Pettus, Clark, Sarff, Bryant, Potts, McHenry, and Wozniak were aware of the discriminatory actions, failed to take action to stop the illegal discrimination based on gender, and supported the illegal actions through the investigative process and thereafter, including participating and encouraging ongoing acts of retaliation.

136.    From July 28, 2021, to the present, Defendant City of Columbus' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

29

137.    As a direct and proximate result of the Defendant City of Columbus' actions as set forth above, Plaintiff suffered and continues to suffer damages and losses from July 28, 2021, to the present, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff suffered from and continues to suffer from emotional distress all for which they should be compensated.

138.    The above actions by the Defendant City of Columbus, on and after July 28, 2021, constitute unlawful discrimination in violation of 42 U.S.C. § 2000e *et seq*., and  R.C. 4112, *et seq*., rendering Defendant City of Columbus liable for injunctive relief, equitable relief, including damages, attorney fees, compensatory damages, damages for emotional distress, loss of income, benefits, and other such damages as may be proven at trial, under the provisions of 42 U.S.C. §2000e-5 and 42 U.S.C. §1983, as well as R.C. 4112.052.

139.    The facts as alleged herein demonstrate that Defendant City of Columbus, on and after July 28, 2021, engaged in discriminatory practices, ongoing harassment, and retaliation with malice or with reckless indifference to Plaintiff's federally protected rights.

140.    As a result, Defendant City of Columbus' actions, on and after July 28, 2021, warrant the imposition of punitive damages under 42 U.S.C. 42 U.S.C. §1983, Ohio common law, and other applicable law.

141.    Furthermore, punitive damages are warranted under state law, as Defendant City of Columbus' actions, on and after July 28, 2021, constitute oppression and/or malice, Defendant City of Columbus authorized and ratified such conduct,  or should have anticipated such conduct would

occur and taken steps to prevent such conduct, especially after such conduct was reported to Defendants by Plaintiff, and appropriate remedial action and remedies were not taken.

## COUNT III- RETALIATION (against the City of Columbus)

### Title VII, 42 U.S.C. § 2000e *et seq.;* R.C.4112, *et seq.*

142.    Plaintiff incorporates the previous paragraphs as if fully rewritten herein and further alleges as follows:

143.    From July 28, 2021, to July 1, 2022, Plaintiff was qualified and held positions as a sworn law enforcement officer for the Columbus Division of Police.

144.    Following Plaintiff's reports of unlawful conduct to Defendant City of Columbus, and its agents, to include Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts and Wozniak, and their participation in investigations regarding this unlawful conduct, the discrimination and harassment escalated, and adverse employment actions were taken against Plaintiff, as set forth herein, from July 28, 2021, to the present, in violation of 42 U.S.C. §2000e, *et seq.* and R.C. Chapter 4112, *et seq.*  Specifically, and during the period of July 28, 2021, to July 1, 2022, actions by Defendants include, but are not limited to, harassing and intimidating Plaintiff through the investigative process, treating Plaintiff differently than similarly situated male officers and supervisors, threatening Plaintiff with job actions and administrative charges for reporting misconduct by a public official and discriminatory behavior,  denying Plaintiff a substantial monetary benefit afforded to similarly situated males, causing Plaintiff to lose tangible employment benefits including pay, and publicly disparaged Plaintiff by accusing her of interfering in a criminal investigation, and retaliating against Plaintiff for protected speech.

31

145.    Thus, Plaintiff, from July 28, 2021, to the present, has been discriminated against because she opposed practices made an unlawful employment practice by Title VII and/or R.C. Chapter 4112, and/or because they made charges, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII and/or R.C. Chapter 4112, in violation of 42 U.S.C. § 2000e-3(a), and under 4112.02(I).

146.    As a direct and proximate result of the Defendant City of Columbus' conduct described herein,  from July 28, 2021, to July 1, 2022, Plaintiff suffered and continues to suffer irreparable harm and damages, including but not limited to loss of income, benefits, opportunity, and other valuable job rights. Plaintiff also suffered from and continues to suffer emotional distress from Defendants' conduct described herein, all for which Plaintiff should be compensated.

147.    The above actions by the Defendant City of Columbus, from July 28, 2021, to July 1, 2022, constitute unlawful discrimination in violation of 42 U.S.C. §2000e, *et seq.* and R.C. Chapter 4112, *et seq.*, rendering the Defendant City of Columbus liable for injunctive relief, equitable relief, including back pay, damages, attorneys fees, compensatory damages, including damages for emotional distress, loss of income, benefits, and other such damages as may be proven at trial, under the provisions of 42 U.S.C. §2000e-5, as well as R.C. Chapter 4112 and R.C. 4112.052.

148.    The facts as alleged herein demonstrate that Defendant City of Columbus engaged in discriminatory practices, ongoing harassment, and retaliation, from July 28, 2021, to July 1, 2022, with malice or with reckless indifference to Plaintiffs' federally protected rights.

149. As a result, Defendant City of Columbus' actions warrant the imposition of punitive damages under 42 U.S.C. 42 U.S.C. §1983, Ohio common law, and other applicable law.

150. Furthermore, punitive damages are warranted under state law, as Defendant City of Columbus' actions constitutes oppression and/or malice, Defendant City of Columbus authorized and ratified such conduct, or should have anticipated such conduct would occur and taken steps to prevent such conduct, especially after such conduct was reported to top level management by Plaintiffs, and appropriate remedial action and remedies were not taken.

## COUNT IV – DEPRIVATION OF RIGHTS (against all Defendants)

### Title 42 U.S.C. § 1983 *et seq.*

151. Plaintiff incorporates the previous paragraphs as if fully rewritten herein and further alleges as follows:

152. Defendants, at all times relevant to this action, were the City of Columbus, and/or City employees or officers acting in their official capacity, including but not limited to, supervising, directing investigations, ruling on investigations, applying policies, evaluating subordinates, firing and disciplining employees.

153. Defendants, at all times relevant to this action, were acting under the color of law.

154. From July 28, 2021, to July 1, 2022, Defendants unlawfully deprived Plaintiff of her Constitutional rights in violation of the Fourteenth Amendment and the Equal Protection Clause of the Constitution of the United States.

155. Each of the individual Defendants, including Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak, each personally participated in the adverse actions,

33

retaliation, and gender discrimination undertaken during this period of July 28, 2021, to July 1, 2022, and as outlined in detail in the preceding paragraphs. This included multiple acts of joint consultation with each other frequently, and at least several times a month, from March 1, 2022, to July 1, 2022, to coordinate and direct the discrimination and retaliation.

156.     From July 28, 2021, to the present, Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak, ensured that each personally was engaged in selectively treating Plaintiff less favorably based on her gender compared with other similarly situated male employees when Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts and Wozniak failed to act on clear evidence of discrimination and harassment suffered by Plaintiff.

157.     From July 28, 2021, to July 1, 2022, Plaintiff suffered retaliation, and Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak, conspired to retaliate and discriminate against Plaintiff based on their participation in discrimination investigations and proceedings. Specifically, Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts and Wozniak, were each personally involved in utilizing and/or permitting the weaponization of the investigative process to harass and retaliate against Plaintiff, refusing to progress discrimination and retaliation claims properly reported by Plaintiff, treating Plaintiff different than similarly situated male supervisors, attempting to intimidate Plaintiff and suppress Plaintiff's protected speech,  denying Plaintiff a substantial monetary benefit afforded similarly situated male supervisors, removing Plaintiff from the retirement process in order to intimidate and deny her a substantial monetary benefit, causing Plaintiff to abandon a preferred position in reliance of the retracted benefit opportunity and to avoid continued harassment, taking  other job actions against

34

Plaintiff following her opposition to, and reporting of, unlawful discriminatory actions, and attempting to harass, intimidate and deny Plaintiff her First Amendment rights.

158.    From July 28, 2021, to July 1, 2022, the present, Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak failed to enforce established policies, actively participated and/or failed to address disparate treatment based on gender, and permitted and encouraged Defendant Wozniak to retaliate against Plaintiff and continue to perpetuate a hostile work environment based on gender.

159.    From July 28, 2021, to the present, Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak's actions and failure to fairly enforce established policies based on the gender of the involved parties, were a direct and proximate cause of the constitutional deprivation suffered by Plaintiff.

160.    Defendant, City of Columbus is likewise liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) for the foregoing Equal Protection violations, because (i) officials with final decision-making authority ratified and personally participated in the illegal actions; (ii) the City had and may still have a policy of inadequate training or supervision, including the failure to investigate, supervise, and take appropriate action concerning the handling of discriminatory investigations, despite the existence of prior legitimate complaints against the City for similar unconstitutional misconduct; and (iii) the City had and may still have a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

161. The above actions by each of the Defendants constitute unlawful discrimination in violation of 42 U.S.C. §1983, *et seq.,* rendering each of the Defendants liable for injunctive relief, equitable relief, including back pay, damages, attorneys fees, compensatory damages, including damages for emotional distress, loss of income, benefits, and such other damages as may be proven at trial, under the provisions of 42 U.S.C. §1983 and 42 U.S.C. § 1988.

162. The facts as alleged herein demonstrate that individual Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak engaged in discriminatory practices, ongoing harassment, and retaliation with malice or with reckless indifference to Plaintiffs' federally protected rights.

163. As a result, the Defendants' actions warrant the imposition of punitive damages under 42 U.S.C. §1983 and other applicable laws against Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak.

### **COUNT V – DEPRIVATION OF RIGHTS -- R.C. 4112.02(J) (individual Defendants)**

164. Plaintiff incorporates the preceding paragraphs as if fully restated here.

165. R.C. 4112.02(J) prohibits any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

166. Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak violated R.C. 4112.02(J) by each aiding, abetting, compelling, and coercing, violations of R.C. Chapter 4112, including by and through the actions outlined in the preceding paragraphs.

167.    Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts and Wozniak were each involved in the receipt of complaints about and involving Wozniak, who himself was personally involved in the pervasive activity set forth herein, to including ongoing efforts to perpetuate gender discrimination and retaliation, during the relevant limitations period, and each individual Defendant took active and concerted steps to see that those complaints were not investigated, to further direct and see that the individual (Plaintiff) making the complaints was punished or otherwise retaliated against, for her protected activity, and thus each aided, abetted, incited, compelled, or coerced the doing of acts declared by R.C. 4112.02 to be an unlawful discriminatory practices; in the same vein, each of the foregoing Defendants obstructed, prevented, and continue to obstruct and prevent Plaintiff and others from complying with R.C. Chapter 4112, as well as have attempted directly or indirectly to commit unlawful acts of discrimination under R.C. Chapter 4112.

168.    As a direct and proximate result of the Defendants' conduct described herein, Plaintiff suffered and continues to suffer irreparable harm and damages, including but not limited to loss of income, benefits, opportunity, and other valuable job rights. Plaintiff also suffered from and continues to suffer emotional distress from Defendants' conduct described herein, all for which Plaintiff should be compensated.

169.    The above actions by the Defendants constitute unlawful discrimination in violation of R.C. Chapter 4112, *et seq*., rendering Defendants liable for injunctive relief, equitable relief, including back pay, damages, attorneys fees, compensatory damages, including damages for

emotional distress, loss of income, benefits, and other such damages as may be proven at trial, under the provisions of R.C. Chapter 4112 and R.C. 4112.052.

**COUNT VI – CONSPIRACY TO VIOLATE CIVIL RIGHTS (individual Defendants)**

170.    Plaintiffs incorporate the preceding paragraphs as if fully restated here.

171.    From July 28, 2021, to July 1, 2022, Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak, being two or more persons in Ohio, and acting under color of law, each personally conspired to prevent, by intimidation or threat, Plaintiff from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; they further conspired to injure Plaintiff in her person or property on account of the lawful discharge of the duties of Plaintiff's offices, and they conspired, while engaged in the lawful discharge thereof, or to injure Plaintiff's property to molest, interrupt, hinder, or impede them in the discharge of their official duties, all in violation of 42 U.S.C. § 1985(1).

172.    From July 28, 2021, to the present, Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak, being two or more persons in Ohio, conspired to impede, hinder, obstruct, or defeat, in any manner, the due course of justice in the State of Ohio, with intent to deny to Plaintiff, as a citizen, the equal protection of the laws, or to injure her or her property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws, all in violation of 42 U.S.C. § 1985(2).

173.    From July 28, 2021, to the present, Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak, being two or more persons in Ohio, conspired for impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in the State of Ohio,

with intent to deny to Plaintiff, as a citizen, the equal protection of the laws, or to injure her or her property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws, all in violation of 42 U.S.C. § 1985(2).

174.    Specifically, and without limitation, from February 1, 2021, Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak held meetings, together and/or in subgroups, with a common conspiratorial purpose and each directed, was involved in directing, and conspired to direct the acts of retaliation, outlined in the preceding paragraphs against Plaintiff, and to create a pervasive and hostile working environment.

175.    As a direct and proximate result of the Defendants Ginther, Pettus, Clark, Sarff, McHenry, Bryant, Potts, and Wozniak conduct described herein, Plaintiff suffered and continues to suffer irreparable harm and damages from July 28, 2021, to the present, including but not limited to loss of income, benefits, opportunity, and other valuable job rights. Plaintiff also suffers from and will continue to suffer emotional distress from the individual Defendants conduct described herein, all for which Plaintiff should be compensated.

176.    The above actions by the individual Defendants constitute an unlawful civil rights conspiracy, in violation of 42 U.S.C. § 1985, rendering individual Defendants liable for injunctive relief, equitable relief, including back pay, damages, attorneys fees, compensatory damages, including damages for emotional distress, loss of income, benefits, and other such damages as may be proven at trial, under the provisions of 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

177.    The facts as alleged herein demonstrate that individual Defendants engaged in discriminatory practices, ongoing harassment, and retaliation, from July 28, 2021, to the present, with malice or with reckless indifference to Plaintiff's federally protected rights.

178.    As a result, individual Defendants' actions warrant the imposition of punitive damages under law.

## COUNT VII – NEGLECT TO PREVENT CONSPIRACY TO VIOLATE CIVIL RIGHTS (individual Defendants)

179.    Plaintiff incorporates the preceding paragraphs as if fully restated here.

180.    From July 28, 2021, to the present, individual Defendants, having knowledge that any of the wrongs conspired to be done, and mentioned in 42 U.S.C. § 1985, were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected or refused so to do, in violation of 42 U.S.C. § 1986.

181.    As a direct and proximate result of the individual Defendants' conduct described herein,  Plaintiff suffered and continues to suffer irreparable harm and damages, from July 28, 2021, including but not limited to loss of income, benefits, opportunity, and other valuable job rights. Plaintiff also suffered from and continues to  suffer emotional distress from individual Defendants' conduct described herein, all for which Plaintiff should be compensated.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a.  For all back pay, pre-judgment interest, fringe benefits, and any other appropriate relief necessary to make Plaintiff whole, and compensate them for the civil rights violations described above;

b.  For compensatory damages, not otherwise included in backpay and pre-judgment interest and fringe benefits, including emotional damages, liquidated damages, injunctive relief,

including the removal of any derogatory information regarding Plaintiff found in any employment file or otherwise;

c.  For Plaintiff's costs herein expended, including reasonable attorney's fees;

d.  For an award of punitive damages;

e.  For sufficient injunctive relief, enjoining future violations of state and federal anti-discrimination law by Defendants, removal of any adverse employment information, and/or other restorative injunctive relief;

f.  For trial by jury on all issues so triable; and

g.  All other relief as this Court finds just and proper.

Respectfully Submitted,

*/s/Zachary Gottesman*
Zachary Gottesman (0058675)
Gottesman & Associates, LLC
404 East 12th Street
Cincinnati, OH  45202
Tel:    (513) 651-2121
Fax:    (513) 568-0655
zg@zgottesmanlaw.com

/s/Jennifer L. Knight
Jennifer L. Knight (0095480)
Gottesman & Associates, LLC
404 East 12th Street
Cincinnati, OH  45202
Tel:    (513) 651-2121
Fax:    (513) 568-0655
Jknight6291@yahoo.com

*/s/Robb S. Stokar*
Robb S. Stokar (0091330)
Stokar Law, LLC
404 East 12th Street, First Floor
Cincinnati, Ohio 45202
Tel: 513-500-8511
rss@stokarlaw.com

41

*Attorneys for Plaintiffs*

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

*/s/ Zachary Gottesman*
Zachary Gottesman (0058675)